IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LAURA CLAYTON                                                                                          PLAINTIFF

v.                              Civil No. 08-5064

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                         DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Laura Clayton, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") pursuant to Title XIV of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background**

The plaintiff filed her application for SSI on May 10, 2005, alleging an inability to work due to shoulder, back, and foot injuries. (Tr. 54, 79-80, 103, 112). An administrative hearing was held on November 7, 2006. (Tr. 41-42, 325-354). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 45 years old and possessed the equivalent of a high school education and a nursing assistant's certification. (Tr. 331-332). The record reveals that she had past relevant work experience ("PRW") as a certified nurse aide. (Tr. 332-334).

**AO72A**
**(Rev. 8/82)**

On March 6, 2007, the Administrative Law Judge ("ALJ") determined that plaintiff suffered from a combination of severe impairments, but did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 23). He then concluded that plaintiff maintained the RFC to occasionally lift 20 pounds and frequently lift 10 pounds; stand and walk for a total of two hours and sit for a total of six hours; occasionally lift/reach with the left shoulder, crawl, kneel, and balance; and, never crouch. (Tr. 23). From a mental standpoint, he also determined that she had a limited, but satisfactory ability to remember locations and work-like procedures; understand, remember, and carry out simple instructions; perform activities within a schedule; maintain regular attendance; and, be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintaining attention and concentration for extended periods; and, traveling in unfamiliar places or using public transportation. (Tr. 23-24). With the assistance of a vocational expert, the ALJ determined that plaintiff could perform work as a cashier, bookkeeper/accountant/auditor clerk, and surveillance system monitor. (Tr. 27).

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on February 6, 2008. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 9, 10).

2

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

AO72A
(Rev. 8/82)

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**:

In the instant case, plaintiff filed additional medical evidence with the Appeals Council. Under the regulations, "if a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990). However, the timing of the evidence is not dispositive of whether the evidence is material. *Id*. Evidence obtained after an ALJ decision is material if it related to the claimant's condition on or before the date of the ALJ's decision. *Basinger v. Heckler*, 725 F.29 1166, 1169 (8th Cir. 1984).

Once it is clear that the Appeals Council has considered newly submitted evidence, we do not evaluate the Appeals Council's decision to deny review. Instead, our role is limited to

4

deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made. *See, e.g., Nelson,* 966 F.2d at 366, and *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir. 1992). Of necessity, that means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

In the present case, the ALJ determined that plaintiff's subjective complaints were not entirely credible because there was no objective evidence to indicate that plaintiff had ever undergone a laminectomy, as she alleged. However, plaintiff submitted medical records to the Appeals Council showing that she underwent a discectomy at the L5-S1 level in 1993. (Tr. 310-318). The remainder of the medical evidence reveals as follows.

An MRI of plaintiff's spine conducted in March 2002 revealed a probable right-sided intraforaminal focal disc protrusion at the L3-4 level, which could be causing some mass effect on the exiting right L3 nerve root; mild disc degeneration at the L3-4 level; and, moderate disc degeneration and diffuse disc bulging at the L4-5 level with minimal central canal stenosis. (Tr. 131-132). Records indicate that plaintiff's condition was treat via epidural steroid injections "(ESI's"). (Tr. 134-157).

In August 2004, plaintiff was injured while working as a CNA. (Tr. 158-164). She caught a falling patient, which jerked her left upper extremity, left lower extremity, and lower back. Plaintiff initially underwent treatment with analgesics and muscle relaxers. However, she continued to have back pain with left lower extremity radiculopathy, and was referred to a

neurosurgeon. Her left shoulder also continued to bother her with anterior pain and some biceps tenderness proximally. Dr. Terry Sites diagnosed her with a left rotator cuff tear, a left biceps tendon tear, and a left subacromial impingement. Dr. Sites also noted that plaintiff's gait showed favoring the left lower extremity. An MRI of plaintiff's lumbar spine taken this same month showed some soft tissue signal intensity in the left lateral recess at the L4-5 level and facet arthropathy and ligamentous hypertrophy causing lateral recess stenosis at the L4-5 level with some involvement of the L5 nerve root. (Tr. 160).

In September 2004, plaintiff was evaluated by Dr. Kelly Danks, a neurosurgeon. (Tr. 165). Dr. Danks assessed her with back pain and left lateral recessed stenosis secondary to degenerative disease and prescribed physical therapy. (Tr. 165).

In July 2006, Dr. Alice Martinson completed a orthopaedic consultation of plaintiff. (Tr. 239-241). Plaintiff reported pain, stiffness, popping, swelling, and pain in her knee; lower back pain which intermittently radiated down the left leg with numbness and tingling of the lateral aspect of the left foot; and, leg symptoms made worse by sitting, standing, or walking for longer than about 15 minutes at a time. Dr. Martinson noted a full range of motion in the right shoulder in all directions, mild weakness, and moderate discomfort with resisted abduction and external rotation of the left shoulder, pain and give-away weakness with resisted left elbow flexion, tenderness over the anterior aspect of the left shoulder joint, hypesthesia to light touch on the lateral aspect of the left calf and foot, normal and symmetrical deep tendon reflexes at both knees and ankles, and very mild weakness of the left ankle dorsiflexion. X-rays revealed mild loss of disk height at the L5-S1 and very small marginal spurs on the vertebral bodies at the L3-4 interspace, but no other obvious bony abnormalities. Dr. Martinson noted that plaintiff's

symptoms and findings were consistent with a diagnosis of a superior labral tear in the left shoulder and had physical findings consistent with left L5 radiculopathy. Dr. Martinson then assessed her with a 15 percent total body impairment rating. (Tr. 241).

Records also show that plaintiff was prescribed Demerol, Norflex, Vicodin, and Flexeril to treat her pain and discomfort. (Tr. 167-176, 217, 233, 237, 284-285). She also underwent physical therapy and chiropractic treatment in an attempt to alleviate her pain. (Tr. 165, 224-231). Given the medical evidence of record, we believe that the medical records submitted to the Appeals Council showing that plaintiff did undergo a diskectomy in 1993, had they been before the ALJ, would have impacted his RFC determination. These records bolster plaintiff's credibility concerning her subjective complaints. They also provide additional clarity concerning the true severity of plaintiff's back impairment. According, remand is necessary to allow the ALJ to consider this additional medical evidence.

Aside from RFC assessments completed by consultative or one time examiners, the record is devoid of evidence indicating plaintiff's workplace abilities. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Therefore, on remand, the ALJ should also address interrogatories to the physicians who have evaluated and/or treated plaintiff, asking the physicians to review plaintiff's medical records; to complete a mental and physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the

7

relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

We also find the ALJ's dismissal of Dr. Cara Hartfield's mental evaluation to be concerning. Medical records indicate that plaintiff had reported problems with anxiety and difficulty sleeping on numerous occasions. (Tr. 167-176, 237, 284-285). In fact, she had been prescribed both Xanax and Trazodone to treat this condition. Then, on October 16, 2006, plaintiff underwent a general mental status exam and evaluation of adaptive functioning with Dr. Hartfield. (Tr. 300-305). Plaintiff denied any inpatient or outpatient psychiatric treatment, but did state that she got depressed quite a bit. Dr. Hartfield noted that plaintiff's short-term memory problems were evident in her inability to recall more than three digits forward and four digits backward. However, there was no evidence of unusual passivity, dependency, impulsiveness, or withdrawal. Aggression was noted as plaintiff reported that she used to get into physical fights years prior when she worked as a bouncer at a bar. Her concentration was also markedly affected. Dr. Hartfield estimated her IQ to be 80 or greater. The MMPI-2 indicated that plaintiff was experiencing a mild to moderate level of emotional distress characterized by dysphoria, worrying, and anhedonia. Persons with this personality type were said to frequently worry about something; feel inadequate, helpless and insecure; be easily hurt by criticism or scolding; have difficulty expressing their feelings; be over controlled and fearful of losing control; likely to experience increases in depression, fatigue, and physical symptoms in response to stress; unlikely to express their anger overtly; likely to feel socially inadequate; lacking in self-confidence; and, were likely to be self-doubters. These individuals were also noted to have concentration difficulties, memory problems, and low self-esteem, as well as lack self-confidence and be self-

8

doubters. They tired quickly, experienced sleep difficulties, did not wake up fresh and rested most mornings, and had poor health that interfered with their ability to work. .

Dr. Hartfield diagnosed plaintiff with major depressive disorder and indicated that her depression was chronic in nature and not expected to improve within 12 months. Plaintiff appeared open and honest with no evidence of exaggeration or malingering. (Tr. 300-305). She also completed a mental RFC assessment and indicated that plaintiff had marked limitations in the areas of understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; and, traveling in unfamiliar places or using public transportation. (Tr. 306-308). Dr. Hartfield also found that plaintiff had moderate limitations in the areas of remembering locations and work-like procedures; understanding, remembering, and carrying out short and simple instructions; performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; working in coordination with or proximity to others without being distracted by them; accepting instructions and responding appropriately to criticism from supervisors; and, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 306-308).

The ALJ dismissed Dr. Hartfield's assessment stating that it was inconsistent with the medical evidence and was performed through attorney referral, in connection with an apparent effort to generate evidence for her application. However, because plaintiff did have a history of anxiety and had been prescribed strong anti-anxiety and/or antidepressants to include Xanax and Trazodone, we believe remand is necessary to allow the ALJ to reevaluate plaintiff's mental RFC.

**AO72A**
**(Rev. 8/82)**

We also note that dismissing an examining doctor's opinion on the basis that the plaintiff was referred to the doctor by her attorney is not a valid reason for discounting the opinion. If this were so, all of the evaluations ordered by the Administration and performed by Administration doctors would also be suspect and subject to summary dismissal as they are paid for and recommended by the Administration.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 5th day of March 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE